IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2003

## STATE OF TENNESSEE v. SUSAN SOPHIA MCDANIEL

**Direct Appeal from the Criminal Court for Cumberland County**
**No. 6513     Leon C. Burns, Jr., Judge**

---

**No. E2002-02469-CCA-R3-CD**
**June 19, 2003**

---

JAMES CURWOOD WITT, JR., J., concurring.

I believe the issue raised in the footnote in Judge Riley's opinion bears further elaboration in view of this court's recent opinion in *State v. Brigitte Pauli*, No. M2002-01607-CCA-R3-CD (Tenn. Crim. App., Nashville, June 5, 2003).

In *Brigitte Pauli*, the defendant was a warehouse or sales manager for the victim, a company that produced small appliances. She arranged to sell a large number of the appliances to a "liquidator" for unit cash prices less that her company's cost in producing the goods. *Id.*, slip op. at 2-8. In grading the theft based upon the "value" of the property stolen from the victim, this court diminished the value of the goods by the amount of cash actually paid by the buyer to the victim-seller. *Id.*, slip op. at 22.

I believe the result in *Brigitte Pauli* was correct. Assuming that it was, how then do we distinguish it from the present case, when the state, in proving the value of the stolen property for purposes of establishing the grade of theft, failed to prove the value of the consideration paid by the defendant to Walmart in exchange for the new mower? Once again, I believe the majority opinion in the present case reaches the correct result in finding sufficient evidence of theft and in declining to disturb a conviction of theft graded via the full value of the new mower transferred by Walmart to the defendant. Thus, some basis for distinguishing the two cases must be identified.

When a theft is born in a sales contract, the scope of the theft may be shaped by the commercial context of the agreement, and the boundaries and contours of that context are set forth in the sales article of the Uniform Commercial Code (UCC). *See* Tenn. Code Ann. §§ 47-2-101 through -725 (2001). I believe the distinction between the two cases is supplied by the contractual context of the sale, as defined by the UCC.

Essentially, the UCC accords to each party a somewhat different status depending upon whether the sale is one of goods-for-cash or one of goods-for-goods.  When a purchase price is payable "in whole or in part in goods[,] each party is a seller of the goods which he is to transfer." Tenn. Code Ann. § 47-2-304(1) (2001).  Thus, the defendant was a "seller" of the used lawn mower, and consequently, with respect to this part of the double transfer, Walmart was the buyer. We know from the evidence at trial, that the defendant's goods did not conform to the exchange contract, placing the defendant-seller in breach.  *See id.* § 47-2-601 (2001).  When the seller's tender is nonconforming, the buyer may "reject the whole," *id.*, either through rejecting the nonconforming goods or, if they have been accepted, by the buyer's revoking his acceptance, *id.* §§ 47-2-602, -608. Retention of the nonconforming goods by the buyer does not necessarily belie a rejection or revocation of acceptance.  *See id.* § 47-2-711(3) (2001).  The code affords the seller and the buyer specific remedies in the event of the other's breach, and a *buyer* who rightfully rejects or justifiably revokes his acceptance of goods has the remedy, *inter alia*, to assert a security interest in the nonconforming goods.  *Id.*  As such, he may hold the goods without necessarily setting off the value against, or applying it to, the purchase price.

Thus, when the sale is comprised of an exchange of goods, the corresponding rights of the parties are different than when a sale is a straight cash trade.  The difference explains the different concepts of value of stolen property applied in *Brigitte Pauli* as opposed to the present case.

_____
JAMES CURWOOD WITT, JR., JUDGE